**Benjamin LITTLEFIELD, Plaintiff,**

**v.**

**TOWN OF OLD ORCHARD BEACH, Defendant.**

**Civ. No. 91–0186.**

United States District Court, D. Maine.

Jan. 10, 1992.

---

John J. Finn, Yarmouth, Me., for plaintiff.

Patrick J. Scully, F. Paul Finsko, Bernstein, Shur, Sawyer & Nelson, Portland, Me., for defendant.

## MEMORANDUM AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GENE CARTER, Chief Judge.

With this action brought under the Fair Labor Standards Act, 29 U.S.C. § 207(a)(1), Plaintiff seeks overtime pay for hours worked for Defendant as an emergency medical technician. Defendant has moved for summary judgment on the grounds that it has complied with the section 7(k) exemption to the Fair Labor Standards Act for ambulance and rescue service employees, which is set forth in 29 C.F.R. § 553.215. Plaintiff has failed to file a timely response to the motion as required by Local Rule 19.

A motion for summary judgment must be granted if:

[T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). As the Court of Appeals for the First Circuit has recently stated: "To survive summary judgment, [the non-moving party] must ... show[ ] that there [is] sufficient evidence such that 'a reasonable jury could, on the basis of the proffered proof, return a verdict' in its favor. *Media Duplication Services, Ltd. v. HDG Software, Inc.*, 928 F.2d 1228, 1240

(1st Cir.1991) (*quoting Brennan v. Hendrigan*, 888 F.2d 189 (1st Cir.1989)).

In general, under Local Rule 19(c) a party who fails to file a timely objection to a motion is deemed to have waived objection. It is well-established law in this district, however, that Fed.R.Civ.P. 56 requires the Court to examine the merits of a motion for summary judgment even though a nonmoving party fails to object as required by Local Rule 19(c). *Gagne v. Carl Bauer Schraubenfabrick*, 595 F.Supp. 1081, 1084 (D.Me.1984); *McDermott v. Lehman*, 594 F.Supp. 1315 (D.Me.1984). Although a total waiver of objection to a motion for summary judgment is not imposed under Local Rule 19(c), a party who fails to object in a timely fashion is deemed to have consented to the moving party's statement of facts to the extent that statement is supported by appropriate record citations. *Lehman*, 594 F.Supp. at 1321.

In this case the material facts set forth and supported by Plaintiff and deemed consented to by Defendant are as follows. Plaintiff worked for the Town of Old Orchard Beach as a staff paramedic from May 17, 1989 to December 3, 1990. He normally worked a 24–hour on, 48–hour off schedule, so that during a three-week work period he worked one 72–hour week and two 48 hour weeks, for a total of 168 hours over the three weeks. Plaintiff was paid weekly for the average weekly number of hours, fifty-six. Fifty-three of these hours were paid at his regular hourly rate and three hours were paid at the overtime rate of one and one-half times the normal hourly rate. The method used for determining Plaintiff's schedule and pay is the same as that used for the Old Orchard Beach Fire Department.

The record also shows that the Emergency Medical Services (EMS) unit, of which Plaintiff was a member, is housed with the Old Orchard Beach Fire Department and that the EMS unit members take part in normal daily cleaning and maintenance work in the fire station area. EMS unit members receive informal training in providing assistance at fire scenes with such tasks as attaching hoses to hydrants, and they occasionally perform such tasks. As a general rule the EMS unit responds with the Fire Department to all fire calls or alarms involving known or suspected structure fires or alarms at structures. The EMS unit responds to traffic accident calls with the Police and Fire Departments where personal injuries are either confirmed or unknown. Although Fire Department personnel usually cut or pull open vehicles to extricate accident victims, the EMS unit often assists in retrieving the victim once the mechanical extrication is completed, and they retrieve the victims when mechanical extrication is not necessary. The EMS unit also is regularly dispatched to crime scenes and public disturbances in which there are injured persons or a significant risk of injury to civilians or to law enforcement personnel.

The EMS unit members receive some training jointly with Fire Department employees. While employed by Defendant, Plaintiff had considerable experience and knowledge in all areas of casualty handling and rescue. Moreover, he had received all appropriate and necessary training for the rescue of fire, crime and accident victims or firefighters or law enforcement personnel injured in the performance of their duties, including training, *inter alia*, in advanced cardiac life support, advanced trauma life support, emergency vehicle operation, casualty handling, advanced airway procedures, intravenous therapy, splinting of fractures, immobilization, and bandaging. Plaintiff also had received training in victim extrication and in the use of basic extrication equipment.

The Fair Labor Standards Act, 29 U.S.C. § 207(a)(1) requires that employees receive compensation for employment in excess of 40 hours per week at a rate not less than one and one-half times the regular pay rate. Defendant argues, however, that Plaintiff falls into an exception to subsection (a)(1) set forth in section 207(k), which provides a different formula for payment of employees of a public agency involved in fire protection or law enforcement activities. Although the section 207(k) exemption does not specifically refer to emergency medical services personnel like Plaintiff, the regulations interpreting

section 207 explicitly state that rescue and ambulance service personnel would be included in the exemption if such personnel form an "integral part" of the public agency's fire protection activities or law enforcement activities. 29 C.F.R. § 553.-210(a); 29 C.F.R. § 553.211(b). The regulations go on specifically to describe the circumstances in which such workers would fit under the exemption:

Ambulance and rescue service employees of a public agency other than a fire protection or law enforcement agency may be treated as employees engaged in fire protection or law enforcement activities of the type contemplated by sections 7(k) and 13(b)(20) if their services are substantially related to firefighting or law enforcement activities in that (1) the ambulance and rescue service employees have received training in the rescue of fire, crime, and accident victims or firefighters or law enforcement personnel injured in the performance of their respective duties, and (2) the ambulance and rescue service employees are regularly dispatched to fires, crime scenes, riots, natural disasters, and accidents. As provided in § 553.213(b), where employees perform both fire protection and law enforcement activities, the applicable standard is the one which applies to the activity in which the employee spends the majority of work time during the work period.

29 C.F.R. § 553.215(a).

■ The uncontradicted evidence before the Court shows that Plaintiff's activities

meet the test set forth in section 553.215. First, he has received training in the rescue of fire, crime and accident victims or firefighters or law enforcement personnel injured in the performance of their duties.[1] *See* Defendant's Statement of Material Facts, ¶ 17. Second, the EMS unit of which Plaintiff was a part was regularly dispatched to fire, accident, crime, and public disturbance scenes. *See id.* ¶¶ 18, 20, 22, 23. The Department of Labor letter ruling states that there is no specific frequency of occurrence which establishes "regularity" and that it must be determined on the basis of the facts of each case. Where, as shown on the present record, the units were dispatched with the police and fire departments in every instance in which their services might possibly be needed, the facts establish without dispute that the units are regularly dispatched with the fire and police departments. It is beyond dispute on the record now before the Court that the EMS personnel form an integral part of Defendant's fire protection and law enforcement activities. *See* 29 C.F.R. §§ 553.210 and 553.211.

■ Despite the fact that plaintiff's activities meet the requirements of section 553.215, Defendant is not entitled to judgment as a matter of law because there remains a genuine issue of fact concerning the percentage of Plaintiff's time spent in activities substantially related to firefighting and law enforcement activities. Sec-

---

[1] There is a debate in the few cases interpreting this section concerning the availability of the exemption for personnel who receive rescue training but who never actually perform rescue functions. *See, e.g., Bond v. City of Jackson,* 939 F.2d 285, 288 (5th Cir.1991) (finding that the first prong of the test requires only receipt of basic rescue training); *O'Neal v. Barrow County Board of Commissioners,* 743 F.Supp. 859 (N.D.Ga.1990) (accord); *Horan v. King County, Washington,* 740 F.Supp. 1471 (W.D.Wash.1990) (finding that medical personnel who never actually perform rescue functions cannot meet the first prong of the test). The Court agrees with the *Bond* court about the interpretation of the regulation based on the language of the regulation and a Department of Labor letter ruling interpreting the regulation. The letter ruling states that the requirement that an EMT be

trained to rescue means that the individual must know basic life-saving and life support procedures like CPR, administration of oxygen and extrication techniques, but "it is not necessary for an EMT to routinely perform any or all of these procedures in order to meet the requirements of the first test." Dept. of Labor, Wage & Hour Div., Ltr.Rul. (Oct. 9, 1987).

Moreover, in this case the record demonstrates that Plaintiff would meet either standard. He not only received the appropriate training but also was part of a unit that often retrieved accident victims from vehicles when mechanical extrication was not necessary. The record also shows that although the EMS unit members normally do not enter burning structures, they were outfitted with a full set of firefighter's protective clothing which would enable them to do so if required.

68

tion 553.212 of the governing regulations places a limitation on nonexempt work which may be performed by personnel for whom the exemption is sought: "A person who spends more than 20% of his/her working time in nonexempt activities is not considered to be an employee engaged in fire protection or law enforcement activities for purposes of this part." There is a dispute among the few District Courts which have addressed the issue as to whether section 553.212 applies to ambulance and rescue service employees. *See Spires v. Ben Hill County,* 745 F.Supp. 690, 699 (M.D.Ga.1990) (holding that section 553.212 does apply); *Horan v. King County, Washington,* 740 F.Supp. at 1479 (using section 553.212 as part of reasoning in denying exemption for paramedics); *O'Neal v. Barrow County Board of Commissioners,* 743 F.Supp. at 862 and n. 1 (finding that § 553.212 does not apply to exemptions authorized by § 553.215). Although section 553.212 does not expressly apply to rescue workers whose activities are described in section 553.215, it applies to "employees engaged in fire protection or law enforcement activities as described in §§ 553.210 and 553.211." Those two sections make plain that the term "employees engaged in fire protection or law enforcement activities" includes rescue and ambulance service personnel under certain circumstances and refer specifically to section 553.215. Section 553.212, therefore, applies to employees described in section 553.-215, and consequently to Plaintiff. *Spires v. Ben Hill County,* 745 F.Supp. at 699.

Defendant has averred that approximately half of the EMS unit's responses occur jointly with the Fire Department, the Police Department, or both, Dantos Affidavit, ¶ 27, and that EMS personnel spend time taking part in the normal cleaning and maintenance work in the Fire Department. The Court can reach no indisputable conclusion about the exact percentages of Plaintiff's time spent at exempt and nonexempt activities from these meager facts. Moreover, even if Plaintiff were shown to have spent eighty percent or more of his time in activities related to fire protection or law enforcement, before the appropriate standard of pay can be applied, an issue of fact must be resolved as to whether Plaintiff spent the majority of his time during each work period on fire protection or law enforcement activities. Section 553.215 makes clear that "[a]s provided in § 553.-213(b), where employees perform both fire protection and law enforcement activities, the applicable standard is the one which applies to the activity in which the employee spends the majority of work time during the work period." [2] Defendant has averred merely that the EMS unit has a closer day-to-day working relationship with the Fire Department than the Police and that their training and duties are more similar to those of the Fire Department than those of the Police Department.

Accordingly, it is ORDERED that Defendant's motion for summary judgment be, and it is hereby, DENIED.

SO ORDERED.

2. Work period is specifically defined in 29    C.F.R. § 553.224.